IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTOINETTE JOHNSON | * | |
| | * | |
| Plaintiff, | * | Case No.: 3:21-cv-181-FDW-DCK |
| | * | |
| v. | * | |
| | * | |
| ADDI KORI, INC., ET AL. | * | |
| | * | |
| Defendants. | * | |

**JOINT MOTION FOR JUDICIAL APPROVAL OF
SETTLEMENT AND DISMISSAL OF ACTION WITH PREJUDICE**

Plaintiff Antoinette Johnson ("Plaintiff") and Defendants Addi Kori, Inc., Big C. Inc., and Cory Headen, individually (together, "Defendants"), (collectively the "Parties"), by and through their undersigned counsel, respectfully request that the Court approve the attached Settlement Agreement and Release ("Agreement", attached hereto) resolving the above-captioned action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

For the reasons stated below, the Parties respectfully request that the Court find that the Agreement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" and dismiss with prejudice Plaintiff's FLSA and associated North Carolina Wage & Hour claims, with prejudice.

**BACKGROUND**

1. Plaintiff filed the above captioned against Defendants, seeking unpaid minimum wage compensation, statutory liquidated damages, and attorney's fees and costs under the FLSA and North Carolina Law.

2. The substance of Plaintiff's Complaint was that Defendants misclassified Plaintiff as an independent contractor and, in doing so, failed to pay Plaintiff

compensation at an hourly rate at least equal to the Federal and/or North Carolina Minimum Wage.

3. In response to the allegations in Plaintiff's Complaint, Defendants assert that (i) Plaintiff was properly classified as an independent contractors and is not entitled to relief under the FLSA or, in the alternative, (ii) Plaintiff substantially benefitted from her independent contractor arrangement with Defendants such that Plaintiff received gratuities and other financial or economic benefits from the relationship meeting or exceeding the Federal and/or North Carolina Minimum Wage requirements and (iii) that Plaintiff did not work in all locations and at the times alleged in the complaint.

4. Following the filing of Plaintiff's Complaint, the Parties engaged in a voluntary exchange of discovery and participated in a mediation with mutually selected mediator, Paul Hefferon, Esq.

5. The mediation did not result in a resolution, but substantial progress was made toward that end. Several days following the mediation, counsel for the Parties re-initiated a settlement dialog and after substantial negotiation (and considering other economic factors that could potentially affect Defendants' ability to satisfy a large settlement or judgment, if one were awarded), the Parties agreed to a total settlement sum of $35,000.00 to be disbursed as follows: $18,500.00 payable to Plaintiff and $16,500.00 payable for Plaintiff's attorney's fees and costs.

6. Following the agreement in terms to the Settlement, the Parties cooperatively drafted and thereafter executed the attached Agreement.

## STANDARD OF REVIEW

1. Judicial review and approval of an FLSA settlement involving a compromise provides final and binding effect. *See Navarro v. Eternal Trendz Customs, LLC*, 2015 U.S. Dist. LEXIS 24828 (D. Md. 2015) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982).

2. "*Lynn's Food Stores* and similar cases recognize a role for less-than-full-value compromise in the FLSA settlement process" and "[t]hese compromises reflect the 'many factors [that] may be in play as the parties negotiate.'" *Lopez*, 748 F. Supp. 2d at 478 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

3. Although the Fourth Circuit "has not specifically identified the factors to be considered in approving FLSA settlements, district courts in this circuit typically employ the considerations set forth . . . in *Lynn's Food Stores*." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *3 (citations omitted); *see also Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110, at *3-4 (D. Md. 2018) (same).

4. As explained in *Navarro*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." This analysis includes consideration of (1) whether there are FLSA issues actively in dispute; (2) the fairness and reasonableness of the settlement; and (3) the reasonableness of the attorney's fees, if included in the agreement. These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employees

are "represented by an attorney who can protect their rights under the statute." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *3-4 (quoting *Lynn's Food Stores*, 679 F.2d at 1354) (other citation omitted); *Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *4 (same).

5. There is a "'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether an FLSA settlement is fair, adequate, and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, *27 (E.D. Va. 2009) (quoting *Camp v. Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172, at *18 (E.D. La. 2004)), *adopted by* 2009 U.S. Dist. LEXIS 89129 (E.D. Va. 2009).

### III. FACTUAL AND LEGAL ANALYSIS

1. Plaintiff alleges she was employed by Defendants as an exotic dancer at Defendants' Diamonds of Charlotte, Club Nikki's, and Candi's Cabaret, all Charlotte North Carolina based gentlemen's clubs at various times during the period of at least January 2019 through about April 2021.

2. While employed, Plaintiff did not work shifts every week and the exact shifts and shift hours Plaintiff worked varied from week to week.

3. Plaintiff has some evidence of the shifts she worked but has no clear no records of the weeks, shifts, or hours she Plaintiff worked at each of Defendants' gentlemen's clubs.

4. Plaintiff estimates from her personal knowledge and recollection that she worked 3-5 shifts per week (at one or more of Defendants' gentlemen's clubs) for her entire employment period. Defendants disagree with Plaintiff's estimation and

contend Plaintiff has dramatically inflated the number of hours and/or shifts she worked at Defendants' gentlemen's clubs.

5. Defendants have some records of the shifts Plaintiff worked at Defendants' gentlemen's clubs. Defendants' records evince about thirteen (13) total shifts worked by Plaintiff during her entire alleged employment period. Plaintiff disagrees with the accuracy and/or reliability of Defendants' records and submits Defendants' records account for only a small portion of the Plaintiff's total shift and/or hours worked.

6. While employed, Defendants paid Plaintiff no wages at all.

7. Plaintiff alleges she is owed free and clear unpaid minimum wage compensation under the FLSA and North Carolina law.

8. Plaintiff admits she agreed with Defendants to the classification of independent contractor. But Plaintiff asserts that such an agreement and/or Plaintiff's subjective intent to be an independent contractor is not relevant or dispositive to Plaintiff's actual classification as contractor or employee. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947); *Secretary of Labor, United States Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1544-1545 (7th Cir. 1987) (The FLSA is designed to defeat rather than implement contractual arrangements); *Brennan v. Partida*, 492 F2d 707, 709 (5th Cir 1974) (holding that it does not "matter that the parties had no intention of creating an employment relationship, for application of the FLSA does not turn on subjective intent"); *Baker v. Flint Eng'g & Constr. Co.*, 137 F. 3d 1436, 1440 (10th Cir. 1998) (finding that rig welders were employees of general contractor even though

parties signed an agreement stating an intent to maintain an independent relationship)

9. Plaintiff alleges that notwithstanding any agreement she may have been signed, Plaintiff's status as employee or contractor is determined by an analysis of certain defined economic reality factors. The factors regularly and customarily analyzed are the following: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on her managerial skill; (3) the worker's investment in equipment or material, or her employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *See McFeeley v. Jacksoln St. Entm't, LLC,* 825 F.3d 235, 241-43 (4th Cir. 2016).

10. Plaintiff alleges her ongoing extended at-will relationship with Defendants, the substantial case law within the 4th Circuit and across jurisdictions affirming and re-affirming exotic dancers as employees under the FLSA and parallel state law, and consideration of all other economic factors confirms Plaintiff and Defendants' employee / employer relationship.

11. Defendants, however, distinguish this matter from other cases where exotic dancers sued for unpaid wages. Defendants argue that after Plaintiff paid her per-shift fee, Plaintiff was free to operate independently within the club, was free to charge customers whatever Plaintiff wished to charge for private and

semi-private dances (or perform no dances at all), and Defendants never subjected to control or demands indicative of an employee/employer relationship.

12. Defendants (i) denies they misclassified Plaintiff as a contractor; (ii) that an analysis of the true economic realities of Plaintiff's work relationship with Defendants had no indicia of an employee/employer relationship; and (iii) that even if Plaintiff is adjudged to have been an "employee" at any time during her relationship with Defendants, the money Plaintiff received in exchange for performing exotic dances within Defendants' gentlemen's clubs substantially exceeded the amount Plaintiff would have received had Defendants paid Plaintiff direct wages at the Federal and/or North Carolina Minimum Wage rate.

13. In consideration of the Parties' stark differences in factual and legal positions, the risks, delays, and costs on both sides associated continued litigation, and Defendants' current and potential future financial position to satisfy a larger settlement or judgment, the Parties agreed to a full and final settlement in the amount and apportioned as set forth above.

14. There has not been no fraud or collusion with respect to the Parties' settlement. Courts have found no fraud or collusion where all parties to the settlement were represented by counsel and the amount to be paid to the plaintiff(s) seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994 at *11-12 (M.D. Fla. 2006).

15. In this matter, each party was independently represented by counsel with experience in litigating claims under the FLSA. Counsel for the Parties were

obligated to and did vigorously represent their clients' rights. Further, the parties' counsel represents to the Court that there was no fraud or collusion on their part.

16. Further, in this case, the probability of success on the merits, as well as the complexity, expense, and length of future litigation, also support approving the parties' settlement. Plaintiff and Defendants continue to disagree over the merits of the claims asserted by Plaintiff. If the parties continued to litigate this matter, they would be forced to engage in costly litigation in order to prove their claims and defenses. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

17. Prior to and during the settlement negotiations, the Parties engaged in a voluntary exchange of discovery and an exchange of legal and factual positions by way of mediation statements. To this end, the Parties and counsel have undertaken an investigation and exchange of information to allow counsel to reach a fair and reasonable resolution of this matter. In agreeing upon the proposed settlement, the Parties were able to conduct an informed analysis of the claims and defenses.

18. In reaching the settlement, the Parties considered Plaintiff's probability of success on the merits and the amount she would be awarded if this case were to proceed to trial. As noted *supra*., Plaintiff and Defendants do not have objectively reliable records of the shifts or total hours Plaintiff worked. Based on Plaintiff's reasonable estimations, Plaintiff believe the balance of unpaid FLSA minimum wage compensation owed is calculated as follows:

| Dates of Employment | Weeks of Employment | 75% of Relevant Weeks of Employment | Shifts Per Week | Hours Per Shift | Hours Per Week | Pre-Kickback Min Wage Owed Per Week | Kickback Paid to Club Per Shift | Kickback Paid to Club Per Week | Total Free & Clear Min Wage Owed Per Week | Total Wages Owed |
|---|---|---|---|---|---|---|---|---|---|---|
| January 2019 - April 2021 | 118 | 88.5 | 3 | 7 | 21 | $152.25 | $25.00 | $75.00 | $227.25 | $20,111.63 |

19. The Settlement in this case, with Plaintiff receiving $18,500.00, reasonably mirrors Plaintiff's estimated unpaid FLSA minimum wage recovery and, given the uncertainties and stark disputes of the case, represents a fair and reasonable settlement of Plaintiff's claims.

20. In this case, Plaintiff's counsel billed a lodestar of approximately $12,500.00 and has forwarded recoverable litigation costs in the amount of about $2,500.00.

21. In an arm's length negotiation separate and apart from the settlement of Plaintiff's underlying claims, Plaintiff's counsel agreed to accept payment by Defendants of attorney's fees and costs in the total gross amount of $16,500.00, an amount that also contemplates additional work drafting the instant motion, editing and revising the same, and securing approval of the Parties' Agreement.

22. Plaintiff and Defendants are satisfied with and have executed a written Agreement representing a full and final settlement resolution resulting in consideration paid to Plaintiff in the amount of $18,500.00 and consideration paid to Plaintiff's counsel in the amount of $16,500.00.

# CONCLUSION

The Parties, through counsel, have worked cooperatively to resolve this FLSA matter in a manner that adequately considers the strengths of Plaintiff's claims, the merits of Defendant's defenses, and the risk and uncertainty of litigation. Accordingly, the Parties respectfully ask this Court to grant this Joint Motion for Approval of the Settlement and enter an Order dismissing this matter, with prejudice.

Date: September 10, 2021

*s/ Josh Krasner*_____
Joshua Krasner, Esq.
Barrett Law Offices, PLLC
5 West Hargett Street, Suite 910
Raleigh, North Carolina 27601
(919) 999-2799 (ph)
Email: jkrasner@barrettlawoffices.com

*/s/ Gregg C. Greenberg*_____
Gregg C. Greenberg, Virginia Bar No. 79610
(Admitted by Pro Hac Vice)
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
Email: GGreenberg@ZAGFirm.com

*Attorneys for Plaintiff*

/s/Amanda A. Mingo_
Amanda A. Mingo, NC Bar No 24423
Rawls, Scheer, Clary & Mingo, PLLC
1011 E. Morehead Street, Suite 300
Charlotte, NC 28204
T: 704-376-3200 F: 704-332-2716
Email: amingo@rscmlaw.com

*Attorney for Defendants*